612 A.2d 546

**SPRING GULCH CAMPGROUND and Selective Risk Insurance Companies, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (SCHNEEBELE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 28, 1992.

Decided June 22, 1992.

Petition for Allowance of Appeal
Denied Jan. 6, 1993.

Hanna A. Dunlap, for petitioners.

John L. Sampson, for respondent.

Before SMITH and KELLEY, JJ., and LORD, Senior Judge.

SMITH, Judge.

Spring Gulch Campground (Employer) and Selective Risk Insurance Companies petition for review of an order of the Workmen's Compensation Appeal Board reversing the decision of the referee which denied Anita K. Schneebele (Claimant) benefits and dismissed her fatal claim petition. The issue before this Court is whether the referee's findings of fact are supported by substantial evidence.

On July 22, 1988, Gary A. Schneebele, Claimant's husband, was injured while working for Employer when the tractor he was operating rolled over, pinning his left arm to the ground. Mr. Schneebele was transported to the emergency room of Lancaster General Hospital and was admitted. The hospital records reflect that he was 35 years old, had sustained a "crush injury involving his chest, arm and back" and that there was no obvious injury to his head or neck. The results of an initial CAT scan were normal but a follow-up scan showed evidence of a developing infarction in the left cerebral hemisphere. On July 24, an angiogram indicated that Mr. Schneebele had a complete occlusion of the left internal carotid artery; and on July 26, it was determined that he was

brain dead. The autopsy confirmed that the cause of death was a "massive left cerebral infarct."

Claimant filed a claim petition alleging that Mr. Schneebele died as a result of an accident which occurred within the course and scope of his employment. In addition to the hospital records, Claimant presented the testimony of two board certified pathologists. Before the referee, Dr. Enrique Penades testified that, as a result of the tractor accident, Mr. Schneebele incurred a "silent" injury to the left side of his neck which caused him to develop a thrombus in his left internal carotid artery, blocking the flow of blood to his brain and causing him to suffer a massive left cerebral infarction and death. In his deposition, Dr. Robert L. Catherman explained that the injury Mr. Schneebele suffered was a blunt force injury to the carotid artery which means that the vessel was compressed against the underlying or adjacent bony spine, bruising its lining layer; after the inner layer was injured, it began to heal by forming a small blood clot or thrombus which grew until it completely obstructed the normal passageway of the entire left side of Mr. Schneebele's cerebral circulation system causing the massive infarction. Claimant's experts further testified that the reason the neck injury was not immediately apparent was because it takes time for the thrombus to evolve; and opined, within a reasonable degree of medical certainty, that Mr. Schneebele sustained injury to his neck in the tractor accident and that this injury was the underlying cause of his death. These experts ruled out atherosclerosis as being the cause of the thrombosis based on Mr. Schneebele's age; lack of illness or disease processes which would increase his risk of atherosclerosis; the absence of a finding of atherosclerosis in Mr. Schneebele's major arteries at the autopsy; and the circumstances surrounding the accident and evolution of events that lead to his death.

Employer presented the deposition testimony of a board-certified pathologist, Dr. Oscar Auerbach, who opined that the July 22 work-related accident was not related to the infarction which resulted in Mr. Schneebele's death because the throm-

bus which completely occluded Mr. Schneebele's internal carotid artery was caused by atherosclerosis. He stated that while the thrombus did not exist prior to the work-related accident, the atherosclerotic condition, being a single atherosclerotic plaque, pre-existed the accident because it is "a slow occurring affair." Dr. Auerbach established that risk factors for atherosclerosis include smoking, age, sedentary lifestyle, high fat consumption, obesity, and diabetes, and not one of these factors was present in this case. He further testified that organs are tested for atherosclerosis before they are transplanted because organs with atherosclerosis are not suitable for transplant; and Mr. Schneebele's heart and kidneys were tested, deemed normal and Claimant signed them over for transplant.

The referee accepted the testimony of Dr. Auerbach and found that:

10. Gary A. Schneebele died as a result of an occlusion of his left internal carotid artery. The occlusion resulted from an embolus, broken off from a thrombus which developed in Mr. Schneebele's blood vessel due to an atherosclerotic condition, which pre-existed the work incident. Neither the development of the thrombus, nor the breaking off of the embolus, nor the occlusion of the carotid artery, nor Mr. Schneebele's death was related to Mr. Schneebele's work incident.

The referee concluded that Claimant did not meet her burden to prove that Mr. Schneebele died as a result of a work-related accident. On appeal, the Board reversed the referee determining that his findings were not based upon substantial evidence since a reasonable mind, reviewing the evidence, could not support the referee's conclusion; and correctly noted that the matter before the referee was whether the thrombus was accident related since the parties agreed that the death resulted from infarction caused by an occlusion due to a thrombus, not an embolus.

On appeal to this Court, Employer argues that the Board erred in reversing the referee by usurping the referee's factfinding powers, substituting its own findings of credibility,

and affording its own weight to the testimony. Employer contends that since the referee specifically accepted as credible the testimony of Dr. Auerbach, and since Dr. Auerbach never recanted his opinion that the death was not related to the work incident, substantial evidence exists to support the referee's decision.

A claimant has the burden to prove that an injury arose in the course of employment and was related thereto. *Krawchuk v. Philadelphia Electric Co.*, 497 Pa. 115, 439 A.2d 627 (1981). When both parties present evidence at the hearing on a claim petition, this Court's scope of review is limited to a determination of whether the referee erred as a matter of law, made findings of fact which are not supported by substantial evidence, or violated constitutional rights. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Grabish v. Workmen's Compensation Appeal Board (Trueform Foundations, Inc.)*, 70 Pa.Commonwealth Ct. 542, 453 A.2d 710 (1982).

It is well settled that the referee, as the ultimate factfinder, must determine issues of credibility and may accept or reject any testimony, including the medical opinion of an expert witness. *Kovalchick Salvage Co. v. Workmen's Compensation Appeal Board (Williams)*, 102 Pa.Commonwealth Ct. 562, 519 A.2d 543 (1986); *Kraemer v. Workmen's Compensation Appeal Board (Perkiomen Valley School Dist.)*, 82 Pa.Commonwealth Ct. 469, 474 A.2d 1236 (1984). Furthermore, where the causal connection between the complained-of condition and the employment is not obvious, the claimant must establish this connection by unequivocal medical testimony. *Cardyn v. Workmen's Compensation Appeal Board (Heppenstall)*, 517 Pa. 98, 534 A.2d 1389 (1987); *Lewis v. Commonwealth*, 508 Pa. 360, 498 A.2d 800 (1985). Clearly, a referee's acceptance of the medical opinion of one expert witness over that of another is not the basis for reversible error. *Bruckner v. Workmen's Compensation Appeal Board*

*(Lancaster Area Vo–Tech)*, 104 Pa.Commonwealth Ct. 290, 521 A.2d 980 (1987).

■ Thus, the role of this Court is to examine the record as a whole in order to determine whether there is evidence that a rational person might find sufficient to support the referee's findings. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 132 Pa.Commonwealth Ct. 277, 572 A.2d 838 (1990), *appeal granted*, 527 Pa. 594, 595, 588 A.2d 915, 916 (1991). Traditionally, this Court has held that the testimony of a single medical expert is a reasonable basis upon which a referee may base a finding of fact despite conflicting evidence. *Id.*

■ In the matter sub judice, the referee found that the death was not work related because the underlying cause of death was a pre-existing atherosclerotic condition. The only evidence in the record of such condition was Dr. Auerbach's unsupported testimony that despite the lack of evidence of the disease in his heart, kidneys or arteries, despite his admission that atherosclerosis was contraindicated by Mr. Schneebele's age, diet, lack of fat consumption, weight, nonsmoking, nonsedentary lifestyle, and lack of significant medical history, Mr. Schneebele had atherosclerosis prior to the accident. Dr. Auerbach also admitted that tests performed on Mr. Schneebele's heart and kidneys were normal and the existence of arteriosclerosis would have made these organs incompatible with transplant to another patient. Hence, the Board appropriately concluded that Dr. Auerbach's opinion is factually unsupported by the record. This testimony, in a vacuum, does not constitute sufficient evidence that a reasonable person would accept to support the referee's finding that Mr. Schneebele had atherosclerosis prior to the accident nor the referee's conclusion that this pre-existing condition caused the death. Accordingly, the order of the board is affirmed.

### ORDER

AND NOW, this 22nd day of June, 1992, the order of the Workmen's Compensation Appeal Board is affirmed.